**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**ST. CROIX, VIRGIN ISLANDS**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CARIBBEAN AUTO MART OF | ) | |
| ST. CROIX, INC. | ) | Case No. 13-10003 (MFW) |
| | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ANNELLE KNIGHT, ESTHER NEWTON, | ) | |
| FITZROY WILLIAMS, PAULINE PETER, | ) | |
| JANET RIVERA, RAMS AUTO REPAIR, | ) | |
| DEREK CAMBRIDGE, ASHEEM CHARLES, | ) | |
| MONIQUE XAVIER, MICHAEL FELIX, | ) | Adv. No. 18-01001 (MFW) |
| BERNARD HAMILTON, | ) | |
| and LEON RICHARDSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARIBBEAN AUTO MART OF ST. CROIX, | ) | |
| Inc., CAG INTERNATIONAL, INC., | ) | |
| d/b/a CARIBBEAN AUTO GROUP, | ) | |
| | ) | |
| Defendant. | ) | Rel. Docs. 40, 58, 60 |

**OPINION**[1]

Before the Court is the Motion for Summary Judgment filed by

the Defendant, CAG International, Inc., d/b/a Caribbean Auto

Group ("CAG").  The dispute is whether CAG, the non-debtor parent

of Caribbean Auto Mart of St. Croix (CAMSTX) (the "Debtor"),

disregarded corporate entity separateness, pre-petition,

_____

[1]    This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

warranting substantive consolidation of CAG and the Debtor.  The Plaintiffs oppose the Motion.[2]  For the reasons stated below, the Court will grant CAG's Motion.

I.    BACKGROUND

A.    Factual History

On March 5, 2001, three individuals, William Lambert, Charles Lambert, and Sydne Hilton (collectively, the "Initial Shareholders") incorporated the Debtor, a car dealership on St. Croix, U.S. Virgin Islands, for the purpose of acquiring the assets of an existing automobile dealership and leasing a commercial facility upon which to operate a General Motors franchise.  (Adv. D.I. 40, at Ex. A ¶¶ 1.1 & 1.2.)[3]  Between 2001 and 2007, the Initial Shareholders incorporated several other entities.  (Id., at Ex. A ¶¶ 1.1, 5.2, 5.3, & 5.6.)  These entities included two real estate investment vehicles: Triple C Inc. ("Triple C") and CT Real Estate Investments Inc., and five dealerships: (i) Lambert Hilton Inc., d/b/a Toyota of St. Thomas;

---

[2]    The Amended Complaint (Adv. D.I. 35) includes Esther Newton as a Plaintiff.  Newton's claim was settled and dismissed in the Superior Court of the Virgin Islands on April 26, 2016, and, as a result, she did not join the Plaintiffs' Opposition to CAG's Motion for Summary Judgment.  (Adv. D.I. 58.)

[3]    References to the record are: "D.I. #" for pleadings filed in the main bankruptcy proceeding (no. 13-10003) and "Adv. D.I. #" for pleadings filed in the adversary proceeding (no. 18-01001).

(ii) Caribbean Auto Mart, Inc. (St. Thomas); (iii) Lambert
Brothers Inc., d/b/a Toyota of St. Croix; (iv) Chrysler-Dodge-
Jeep of St. Croix, Ltd.; and (v) the Debtor.  The Initial
Shareholders collectively owned 100% of the stock in each
corporation and were the only directors on their respective
boards.  (Id.)

On January 2, 2007, CAG was incorporated to serve as the
parent holding company for the seven corporations.  The Initial
Shareholders contributed their stock in each of the seven
entities to CAG in exchange for their pro rata share of CAG's
stock.  (Id., at Ex. A ¶¶ 5.5 & 5.6; Adv. D.I. 58, at Ex. 29A.)

The Plaintiffs are unsecured creditors holding tort and/or
contract claims against the Debtor including claims for wrongful
termination, sale of defective vehicles, fraud, failure to
maintain leased property in good repair, breach of good faith and
fair dealing, breach of implied contract of employment, and
fraudulent misrepresentations in insuring and financing vehicles.
None of the Plaintiffs' claims have been reduced to judgment.

   B.   Procedural History

On March 5, 2013 (the "Petition Date"), the Debtor filed a
voluntary petition under chapter 7.  On November 2, 2013, the
chapter 7 trustee (the "Trustee") filed a Report of No
Distribution.  The U.S. Environmental Protection Agency ("EPA")
filed an objection to the Trustee's Report on November 20, 2013,

3

and sought discovery to determine whether there was any basis for a cause of action against the Debtor and non-debtor parent, CAG, for fraudulent transfers, substantive consolidation, or piercing the corporate veil.  (D.I. 59.)  The Plaintiffs joined in the EPA's objection.  (D.I. 63.)  The Court granted the EPA's discovery request (allowing the Plaintiffs to participate).  Following discovery, the EPA, the Debtor, and CAG filed a motion for approval of a settlement agreement, which the Court granted on August 17, 2016.  (D.I. 158 & 164.)  Thereafter, the Plaintiffs filed a motion for discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure on the grounds that the EPA had not finished reviewing documents and had not conducted any depositions.  (D.I. 165.)  On February 9, 2017, the Court allowed the Plaintiffs to conduct limited discovery (namely, depositions).  (D.I. 174.)

On March 16, 2018, the Plaintiffs filed a complaint alleging that the Debtor, CAG, and CAG's majority shareholder, William Lambert, ought to be substantively consolidated either because: "(i) pre-petition, [the entities] disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one entity, or (ii) post-petition, their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors."  (Adv. D.I. 1.)  In re Owens Corning, 419 F.3d 195, 211-12 (3d Cir. 2005).

4

Alternatively, the Plaintiffs sought to pierce the corporate veil under the alter ego theory. (Adv. D.I. 1.) The Defendants filed motions to dismiss. (Adv. D.I. 22 & 23.)

After a hearing on February 14, 2019, the Court dismissed all claims against William Lambert because the complaint failed to allege that the Plaintiffs viewed Lambert as the Debtor's alter ego and dismissed all claims against CAG except the claim for substantive consolidation under the first test articulated in the Owens Corning decision. (Adv. D.I. 31 & 34.) The Court cautioned, however, that there is a high bar for proving substantive consolidation with a non-debtor. (Id.)

The Plaintiffs thereafter filed an amended complaint (the "Amended Complaint"). (Adv. D.I. 35.) CAG responded with its Motion for Summary Judgment on May 28, 2020. (Adv. D.I. 40.) The Plaintiffs filed their Opposition on August 24, 2020, and CAG filed its Reply on September 8, 2020. (Adv. D.I. 58 & 60.) Briefing is complete, and the matter is now ripe for decision.

II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding, which is a core proceeding concerning the administration of the estate and liquidation of its assets. 28 U.S.C. §§ 1334(b), 157(b)(2)(A) & (O).

The Court has authority to render a final judgment if the
parties consent.  See Wellness Int'l Network, Ltd. v. Sharif, 575
U.S. 665, 683-85, 685 n.13 (2015) (holding that even if the
bankruptcy court lacks constitutional authority to enter a final
order, the parties can consent to a final order expressly or
implicitly); In re Tribune Media Co., 902 F.3d 384, 396 (3d Cir.
2018) (holding that the claimant impliedly consented to entry of
a final order by the bankruptcy court, where he filed several
pleadings without objection to the court's authority to enter a
final order); True Traditions, LC v. Wu, 552 B.R. 826, 836-39
(N.D. Cal. 2015) (holding non-debtor defendant impliedly
consented to final ruling after it filed a motion for summary
judgment in a fraudulent transfer action without objecting to
entry of a final order).

In this case, CAG expressly consented to the entry of a
final judgment by the Court in its first responsive pleading.
The Plaintiffs implicitly consented by filing a complaint seeking
entry of a final judgment in their favor and by filing a response
to CAG's Motion for Summary Judgment without objecting to the
entry of a final order by the Court, as required by the national
and local rules.  Fed. R. Bankr. P. 7008, 7012(b); VI Local
Bankruptcy Rule 7004-2.

III.  DISCUSSION

    A.  Standard of Review

        1.  Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  Material facts are those facts that might affect the outcome of the litigation.

Once the moving party has established a prima facie case, the burden shifts to the non-moving party to present evidence beyond mere "speculation and conclusory allegations" in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that the factfinder could use in reasonably finding for the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).  The Court construes all evidence in the record in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

        2.  Substantive Consolidation

        a.  General Authority

Substantive consolidation is an equitable remedy arising under federal common law.  Owens Corning, 419 F.3d at 206 (citing

Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215 (1941)).

Under the Bankruptcy Code, the power to order substantive

consolidation of bankruptcy estates is derived from the court's

general equitable powers.  Owens Corning, 419 F.3d at 208 n.14

(acknowledging that substantive consolidation is a remedy that

may be available in a bankruptcy case although finding that the

facts of the case did not warrant it).

While they apply slightly different standards, virtually

every Circuit has recognized that substantive consolidation of

debtors is available in a bankruptcy case.  See, e.g., In re

Bonham, 229 F.3d 750 (9th Cir. 2000); In re Giller, 962 F.2d 796,

799 (8th Cir. 1992); In re Hemingway Transp., Inc., 954 F.2d 1,

11 n.15 (1st Cir. 1992); Eastgroup Props. v. Southern Motel

Ass'n, Ltd., 935 F.2d 245 (11th Cir. 1991); S.I. Acquisition,

Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition,

Inc.), 817 F.2d 1142, 1144 n.2 (5th Cir. 1987).  See also In re

Augie/Restivo Baking Co., Ltd., 860 F.2d 515, 518 (2d Cir. 1988)

(finding facts of that case did not justify consolidation but

acknowledging it was an available remedy in bankruptcy cases); In

re Auto-Train Corp., Inc., 810 F.2d 270, 276 (D.C. Cir. 1987)

(same); In re Gulfco Invest. Corp., 593 F.2d 921 (10th Cir. 1979)

(same).

  b. Non-Debtor Consolidation

The Third Circuit left open the possibility that bankruptcy

courts could consolidate non-debtors with debtors.  <u>Owens</u>
<u>Corning</u>, 419 F.3d at 208 n.13.  Many other courts have held that
a court can grant substantive consolidation of debtors and non-
debtors.  <u>See, e.g.</u>, <u>Bonham</u>, 229 F.3d at 769-71; <u>Off. Comm. of</u>
<u>Unsecured Creditors v. Comvest Grp. Holdings (In re HH</u>
<u>Liquidation, LLC)</u>, Adv. No. 16-51204 (KG), 2017 WL 4457404, at *3
(Bankr. D. Del. Oct. 4, 2017) (holding that it had jurisdiction
to consolidate a non-debtor with a debtor); <u>Morse Operations,</u>
<u>Inc. v. Robins LE-COCQ, Inc. (In re Lease-A-Fleet, Inc.)</u>, 141
B.R. 869, 873-74 (Bankr. E.D. Pa. 1992) (finding authority to
consolidate debtor with a non-debtor but concluding the facts in
that case did not support it).

    The courts have set a high burden for granting substantive
consolidation of a debtor with non-debtors, inter alia, to avoid
the circumvention of the strict standards for filing involuntary
petitions or harm to creditors of the non-debtor.  <u>Lease-A-Fleet</u>,
141 B.R. at 872-74.  <u>See also</u> <u>Simon v. ASIMCO Techs., Inc. (In re</u>
<u>Am. Camshaft Specialties, Inc.)</u>, 410 B.R. 765, 786, 791 (Bankr.
E.D. Mich. 2009) (granting motion to dismiss complaint for
substantive consolidation with non-debtor because trustee failed
to state sufficient facts to support a claim that was plausible
on its face).

    The effect of substantive consolidation is to merge all
assets and liabilities of individual entities into a single

survivor such that "claims of creditors against separate debtors morph [into] claims against the consolidated survivor." Owens Corning, 419 F.3d at 205 (quoting Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.), 402 F.3d 416, 423 (3d Cir. 2005)).  "[B]ecause substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this 'rough justice' remedy should be rare[ly used]."  Owens Corning, 419 F.3d at 211.

c.   Standard in the Third Circuit

Whether to order substantive consolidation requires a fact-intensive inquiry on a case-by-case basis.  The Third Circuit has articulated two alternative tests for granting substantive consolidation, only the first of which is at issue in this case: "(i) [whether] pre-petition, [the entities sought to be consolidated] disregarded separateness so significantly [that] their creditors relied on the breakdown of entity borders and treated them as one legal entity."  Id. at 211.

Under this test, the proponent of substantive consolidation must show both (1) "corporate disregard creating contractual expectations of creditors that they were dealing with [the entities to be consolidated] as one indistinguishable entity" and (2) "in their prepetition course of dealing, they actually and reasonably relied on [the] supposed unity [of these entities]." Id. at 212 (emphasis added).

The test for reliance is both subjective ("actually relied") and objective ("reasonably relied").  In re Lisanti Foods, Inc., C.A. No. 04-3868, 2006 WL 2927619, at *8 (D.N.J. Oct. 11, 2006); aff'd, 241 F. App'x 1 (3d Cir. 2007).

Furthermore, those opposing consolidation can defeat a proponent's prima facie case by presenting evidence that other creditors relied on the separate existence of the entities to be consolidated and would be adversely affected by substantive consolidation.  Owens Corning, 419 F.3d at 212.

B.  Application

1.  Corporate Disregard

Under the first element, the Plaintiffs must demonstrate that the Debtor and CAG ignored their corporate separateness. See, e.g., Owens Corning, 419 F.3d at 212; Lisanti, 2006 WL 2927619, at *8.

The Plaintiffs offer a list of activities by CAG and the Debtor that they argue demonstrate this disregard.  CAG responds that it was not involved in many of the listed activities and the others are typical activities of corporate families.  Therefore, CAG argues it should not be subject to substantive consolidation.

a.  Activities before CAG Incorporated

The Plaintiffs reference several activities and interrelationships between the Debtor and its other affiliates

11

that occurred before CAG was incorporated in 2007.[4]   CAG argues

these activities cannot possibly be evidence that CAG disregarded

corporate separateness.  The Court agrees with CAG that

activities which occurred before its formation cannot be evidence

of corporate disregard between CAG and the Debtor.

> b.   Activities Involving Affiliates Other than
> CAG

The Plaintiffs contend that activity between the Debtor and

other affiliates that occurred after CAG was incorporated is

evidence of corporate disregard.  These activities include: (i) a

lease between the Debtor and Keystone Properties (an entity

controlled by a CAG minority shareholder) with excessive rent

(Adv. D.I. 58, at Ex. 23B); (ii) a consignment agreement between

the Debtor and another CAG affiliate in July 2012 (Adv. D.I. 58,

at Ex. 24); (iii) redistribution to the Debtor of customer

payments for fleet vehicles allegedly owed to other CAG

affiliates (Adv. D.I. 40, at Ex. 17 & Ex. A ¶ 8.3); (iv) a

transfer by the Debtor of ten vehicles to another CAG affiliate

---

[4]     These activities include: (i) the Debtor guaranteeing loans
for Triple C in 2001 (Adv. D.I. 40, at Ex. 3), (ii) the Debtor
obtaining floor plan financing from a lender controlled by
Charles Lambert in 2002 and 2004 (D.I. 29; Adv. D.I. 40, at Exs.
11 & 12), (iii) the Debtor providing back-office services
(payroll, insurance, HR and management) to other affiliates, pre-
2007 (Adv. D.I. 40, at Ex. A), (iv) the alleged
undercapitalization of the Debtor in 2001 (Adv. D.I. 35, at ¶
40), and (v) the Debtor causing customers to issue notes payable
jointly to it and the other affiliates, for obligations due to
the Debtor alone (Adv. D.I. 58, at Ex. 3).

in February 2013 (Adv. D.I. 58, at Ex. 27D); and (v) the payment of late rent to Triple C immediately before the bankruptcy case was filed (Adv. D.I. 58, at p. 9; Adv. D.I. 35, at ¶ 120.).

CAG argues that these transactions are not evidence of corporate disregard between CAG and the Debtor because CAG was not a party to any of them.

The Court agrees that, because CAG was not a party to the alleged transactions, they are not evidence of corporate disregard between the Debtor and CAG.  (Adv. D.I. 58, at Exs. 23B, 24, & 27D; Adv. D.I. 40, at Ex. 17.)

c.   <u>Intercompany Transfers in the Ordinary Course</u>

The Plaintiffs argue, however, that there were intercompany transfers and unaccounted payments made between CAG, the Debtor, and the other affiliates, within ninety days of the bankruptcy filing, which supports the conclusion that CAG "siphoned" money from the Debtor.  For example, the Plaintiffs assert that the Debtor could not account for checks issued by the Debtor within ninety days of the Petition Date, relying on email correspondence between CAG and the EPA during the initial discovery phase in 2014.  (Adv. D.I. 58, at Ex. 28H.)  The Court does not find that an inability to respond to a question posed by the EPA during discovery is compelling evidence of disregard of corporate separateness.  Notwithstanding that email, the EPA ultimately settled its dispute with the Debtor.  (D.I. 158 & 164.)

13

The Plaintiffs also rely on an internal spreadsheet that
they contend shows that the Debtor made payments on intercompany
transfers without properly accounting for them.  (Adv. D.I. 58,
at Ex. 33.)  CAG responds that the internal spreadsheet, which
lists outstanding payables for exchanges of parts and services
among the affiliates, was an internal report maintained by CAG
and actually demonstrates that CAG, the Debtor, and the other
affiliates engaged in intercompany exchanges in the normal course
of business that were reimbursed.  (Adv. D.I. 40, at Ex. A.)

CAG presented further evidence that all transfers from the
Debtor to CAG within ninety days of the Petition Date and since
its incorporation were made in the ordinary course of business
for value.  (Adv. D.I. 40, at Exs. 14, 19, 27, & Ex. A ¶¶ 6 & 11;
Adv. D.I. 47, at Ex. 4 ¶¶ 12 & 22; Adv. D.I. 58, at Ex. 29.)
Additionally, CAG presented evidence that the Debtor was able to
remain operational despite losing money for six years because CAG
(as parent), and related entities, Triple C (the Debtor's
landlord), and FSFS (the Debtor's floor plan financier), offered
loans and concessions that an arms-length counterparty would not
have offered.  (Adv. D.I. 58, at Exs. 23C & 25A-D.)

The Court concludes that, rather than show a disregard, the
evidence presented demonstrates that corporate separateness was
maintained.  The intercompany transfers were accounted for in the
Debtor's records and in board resolutions authorizing the Debtor

14

to issue promissory notes on some of the outstanding transfers. (Adv. D.I. 58, at Exs. 25C, 25D, 28D, & 33.)

The Court further concludes that the alleged transactions between the Debtor and the affiliates (other than CAG) are not evidence of a disregard of corporate entity separateness between CAG and the Debtor for several additional reasons.  First, CAG was not a party to many of the alleged intercompany transfers. (Adv. D.I. 58, at Exs. 23B, 24, 27D, & 33; Adv. D.I. 40, at Exs. 17 & 27.)  Second, the Plaintiffs have not presented any credible evidence that any funds were improperly "siphoned" from the Debtor to CAG.  On the contrary, CAG presented evidence that all transfers made by the Debtor to CAG or its affiliates were payments made in the ordinary course of business for goods or services provided by them to the Debtor.  (Adv. D.I. 40, at Ex. A ¶ 7.)  The failure of the Plaintiffs to present any rebuttal evidence in support of their allegations is fatal to their argument at the summary judgment stage.  Fed. R. Civ. P. 56(e)(3).  See, e.g., Ford v. Bureau of Prisons, 570 F. App'x 246, 250 n.1 (3d Cir. 2014) (affirming grant of summary judgment because plaintiff failed to rebut, through affidavits or other evidence, the moving party's evidence).

d.    Activities Typical in Corporate Families

CAG also contends that many of the examples that the Plaintiffs cite are activities engaged in by many corporate

entities which do not support substantive consolidation.  The
Plaintiffs argue, however, that many of these activities have
been found in other cases to satisfy the first test for
substantive consolidation.  These include: (i) having the same
directors, officers, and management at each entity in the family;
(ii) consolidating accounting, tax filing, payroll, and training
services; (iii) sharing employees between entities (and
permitting sales at any dealership to count toward the sales
quota of any entity's employee); (iv) carrying group liability
insurance, which lists each entity as just a different "location"
of the same company; and (v) operating under the same or similar
tradenames, while advertising as "a family of dealerships."[5]
See, e.g., In re ADPT DFW Holdings, LLC, 574 B.R. 87, 102-04
(Bankr. N.D. Tex. 2017); Lisanti, 2006 WL 2927619, at *1.

　　　CAG does not dispute that these activities are extant in
this case but argues that those facts, alone, are insufficient to
establish corporate disregard of separateness.  CAG argues that
it consolidated certain back-office services (accounting, human
resources, and management) for convenience, efficiency, and lower
costs.  It also contends that buying joint insurance for all
entities allowed them to obtain substantial discounts.  CAG notes

---

[5]　　　The Plaintiffs note that several dealer term sheets and
customer financing applications list "CAG" in the header with the
specific dealership also displayed in the center.  (Adv. D.I. 58,
at Ex. 2.)

that even before it was incorporated, the Debtor and the other
affiliates shared many of these same services for the same
reasons.  (Adv. D.I. 40, at Ex. A ¶ 6; Adv. D.I. 58, at Ex. 2.)
CAG also presented evidence that all the back-office services
were reimbursed by the other affiliates for whom the services
were performed, on a pro rata basis.  (Adv. D.I. 40, at Ex. 14 &
Ex. A ¶ 6.)  CAG argues, and the record reflects, that non-
executive employees were moved among the affiliate dealerships
but not between the Debtor and CAG.  (Adv. D.I. 58, at Ex 28D.)
Finally, while the corporate family filed consolidated income tax
returns, CAG presented evidence that each entity kept separate
accounting records.  (Adv. D.I. 40, at Exs. 18-23 & Ex. A ¶ 6.2.)

CAG further argues that many companies share officers and
directors, consolidate services for cost-saving purposes, and
refer to the affiliates as a family of companies, without
creating a basis for substantive consolidation.  See, e.g.,
United States v. Bestfoods, 524 U.S. 51, 69 (1998) (acknowledging
that the presence of common directors and officers typically does
not, alone, warrant corporate veil piercing); Japan Petroleum Co.
(Nigeria) Ltd. v. Ashland Oil, Inc., 456 F. Supp. 831, 841 (D.
Del. 1978) (holding that parent was not liable for subsidiary's
contract breach despite the presence of common directors and
officers, an umbrella insurance policy, representations that
subsidiary is a division of parent, and shared intercompany

services for administrative convenience, such as consolidated payroll).

The Court agrees with CAG that the factors cited by the Plaintiff are insufficient evidence that corporate separateness was disregarded in this case.  See, e.g., R$^2$ Investments, LDC v. World Access, Inc. (In re World Access, Inc.), 301 B.R. 217, 276 (Bankr. N.D. Ill. 2003) (denying substantive consolidation despite (i) inter-company transfers and claims, (ii) incorporation of the subsidiary by the parent, (iii) consolidated financial statements, administrative functions, and insurance, and (iv) common ownership, management, directors and officers, because these facts are typical of most affiliated corporations and do not demonstrate that vendors dealt with the entities as a single unit); Lease-A-Fleet, 141 B.R. at 876, 878 (denying substantive consolidation despite overlapping directors, shared office space, intercompany loans without documentation, and the disregard of formalities when sharing services).

The corporate disregard inquiry is fact-intensive, and no one factor weighs greater than another.  In fact, the Third Circuit rejected the use of so-called alter-ego checklists as they "fail to separate the unimportant from the important. . . ." Owens Corning, 419 F.3d at 210.

In this case, the Court concludes that the facts do not support a finding of corporate disregard.  While entities in the

18

corporate family had similar trade names, the proper corporate names were used on corporate documents, including customer financing applications. (Adv. D.I. 58, Ex. 2.)  While the entities had overlapping officers and directors, CAG presented evidence that the Debtor and CAG observed corporate formalities by holding separate board meetings, issuing separate board and shareholder resolutions, documenting inter-company loans, and maintaining separate bank accounts and books and records. (Adv. D.I. 58, at Exs. 25A-D; Adv. D.I. 50, at Ex. 21; Adv. D.I. 47, at Ex. 4; Adv. D.I. 40, at Ex. A & Exs. 18-23.) Thus, the Court concludes that the evidence presented by the Plaintiffs is insufficient to establish corporate disregard. See Japan Petroleum, 456 F. Supp. at 841; World Access, 301 B.R. at 276; Lease-A-Fleet, 141 B.R. at 876, 878. Cf. ADPT, 574 B.R. at 102 (granting substantive consolidation where entities failed to maintain separate bank accounts).

Similarly, while the entities in this case shared services and other resources, that too does not justify substantive consolidation because it is very common and done for legitimate business reasons, such as cost-cutting and efficiency. Further, CAG presented evidence that any services it or the Debtor provided were reimbursed by the corresponding affiliate. (Adv. D.I. 40, at Ex. A ¶ 6.1.) See Japan Petroleum, 456 F. Supp. at 844. Compare In re Opus East LLC, 528 B.R. 30, 49, 64 (Bankr. D.

19

Del. 2015) (finding evidence of shared services that were
reimbursed — corporate accounting, human resources, legal risk
management, payroll, office services, and tax services — did not
warrant corporate veil piercing) with Lisanti, 2006 WL 2927619,
at *7 (granting substantive consolidation where shared services
were not reimbursed).

In summary, the Court concludes that the facts on which the
Plaintiffs rely to establish that CAG and the Debtor ignored
corporate separateness are either unproven or are insufficient to
establish a basis for substantive consolidation.

2. <u>Reliance</u>

Even if the Plaintiffs had established that CAG and the
Debtor ignored corporate separateness, the Plaintiffs must still
demonstrate that their reliance on that disregard was actual and
reasonable.  The Plaintiffs argue that they reasonably relied on
the corporate "sameness" or unity of the Debtor and CAG when
deciding where to purchase a vehicle or seek employment.  (Adv.
D.I. 58, at Exs. 2-6.)

a. <u>Before CAG was Incorporated</u>

CAG responds that eight of the eleven Plaintiffs could not
have relied on the corporate "sameness" of the Debtor and CAG
when deciding where to purchase a vehicle or seek employment
because CAG was not incorporated until January 2, 2007, <u>after</u>
those eight Plaintiffs had already commenced their relationship

with the Debtor.[6]   (Adv. D.I. 40, at Ex. A & Ex. 13.)

The Plaintiffs respond that if the entity engaging in the disregard of corporate boundaries, pre-2007, was not CAG, then it was a "CAG Affiliate," because the Initial Shareholders were the owners and board members for each of the seven entities as well as CAG, after it was incorporated in 2007.

The Court rejects the Plaintiffs' argument.  An essential element of the test for substantive consolidation is the creditor's actual reliance on the supposed unity of the Debtor and the entity to be consolidated.  Owens Corning, 419 F.3d at 212.  Because CAG did not exist at the time their relationship with the Debtor commenced, these eight Plaintiffs have not established that they relied on the corporate unity of the Debtor and CAG.  See, e.g., Am. Camshaft, 410 B.R. at 789 (dismissing complaint for substantive consolidation where there were no allegations of creditor reliance on corporate disregard).  Consequently, the Court will grant summary judgment in favor of CAG on these eight Plaintiffs' claims for substantive consolidation.

---

[6]    Those eight Plaintiffs are: (i) Derek Cambridge (became an employee in 2005); (ii) Annelle Knight (became a customer in May 2006); (iii) Bernard Hamilton (became an employee in 2004); (iv) Michael Felix (became an employee in 2004); (v) Pauline Peter (became a customer in 2005); (vi) Janet Rivera (a non-customer involved in an accident with a customer of the Debtor in 2005); (vii) Fitzroy Williams (became a customer in 2005); (viii) Rams Auto Repair (entered a lease agreement with Debtor in 2005).

b.   <u>Post-Petition Corporate Conduct</u>

CAG further argues that the three remaining Plaintiffs, who commenced their relationship with the Debtor after CAG was incorporated, rely on evidence of post-petition activities[7] to support their claim for substantive consolidation.  CAG contends that <u>post-petition</u> activities are irrelevant to determining whether the Plaintiffs relied on the alleged disregard of corporate entity separateness between CAG and the Debtor <u>pre-petition</u> when the Plaintiffs' relationship with the Debtor commenced.  The Plaintiffs respond that the post-petition activities are evidence of the effect of CAG's pre-petition control over the Debtor and the disregard of entity separateness.

The Court agrees with CAG that post-petition activities are not relevant to the reliance factor required by <u>Owens Corning</u>. 419 F.3d at 212.  Rather, what is relevant are the activities of the Debtor and CAG on which the Plaintiffs actually relied at the time they entered into their relationship with the Debtor, which occurred pre-petition.  <u>Id.</u>  <u>See also</u> Mary Elisabeth Kors, <u>Alter Egos: Deciphering Substantive Consolidation</u>, 59 U. Pitt. L. Rev.

_____

[7]    These post-petition activities include: (i) one of the Debtor's landlords, Keystone Properties (owned by a minority shareholder of CAG), relet the Debtor's automotive body shop to CAG at a substantially reduced rate ($500 per annum versus $12,000 per month charged to the Debtor); (ii) communications among CAG executives regarding what debts to include on the Debtor's bankruptcy schedules; and (iii) the invoicing of the Debtor's bankruptcy legal costs to CAG. (Adv. D.I. 58, at Exs. 23D, 20, & 27B-C.)

381, 430 (1998) (arguing that factors on which creditors have not
relied are irrelevant to determination of substantive
consolidation).  Therefore, the Court's inquiry focuses on those
pre-petition activities on which the three remaining Plaintiffs
actually relied.

   c. <u>Actual Reliance by Remaining Plaintiffs</u>

  The three remaining Plaintiffs — Monique Xavier, Asheem
Charles, and Leon Richardson — became customers of the Debtor
<u>after</u> CAG was incorporated in 2007.  While they all filed
complaints, no one has a judgment.

  Xavier and Charles allege that the Debtor sold them the
wrong vehicle and recorded the wrong VIN number on their sale
agreement and insurance paperwork, which forced them to accept a
lesser model when the error was discovered.  (Adv. D.I. 58, at
Ex. 17.)  Their claim is for fraud, misrepresentation, and breach
of contract.  (<u>Id.</u>)  Richardson alleges that the Debtor sold him
a previously owned defective vehicle, while representing that it
was new, and that the Debtor failed to honor his warranty.  (Adv.
D.I. 58, at Ex. 13.)

  Only Monique Xavier submitted an affidavit to support her
contention that she relied on the unity of the Debtor and CAG.
It states, in part:

    I made the decision to purchase a vehicle from
   Caribbean Auto Group and its family of dealerships
   based on the relationships they indicated they had with

23

> Scotia Bank [one of the Debtor's lenders] and Marshall
> and Sterling [the Debtor's insurance provider] and the
> fact that by going to Caribbean Auto Group's sale I
> could choose from a variety of car manufacturers.
>      The representations as to the relationship with
> Scotia Bank and Marshall and Sterling were not specific
> only as to [the Debtor].  It was clear that Caribbean
> Auto Group made the representation as to applying to
> its family of dealerships. . . .

(Adv. D.I. 58, at Ex. 4.)

Xavier further stated in her response to CAG's

interrogatories, attached to her affidavit, that:

> I understood Caribbean Auto Mart, St. Croix Dodge
> Jeep and Chrysler, and Caribbean Auto Group to be one
> company.  I dealt with the same employees at Caribbean
> Auto Mart and St. Croix Doge [sic] Jeep and Chrysler
> there was no difference between the companies.  I
> understood Caribbean Auto Group to be the same.  All of
> the named groups were located at the same place.  They
> were all just divisions of one company.  And therefore,
> they were all privy to the same information and
> directives.

(Id.)

CAG argues that the affidavit and interrogatory response are

inadmissible evidence that Monique Xavier actually relied on the

unity of CAG and the Debtor.  CAG argues that the statements are

conclusory, not based on fact or personal knowledge.  Instead,

CAG contends that the statements are mere speculation and

personal opinion that Xavier would have declined to purchase a

vehicle from the Debtor had she known the Debtor was not the same

entity as CAG.  Fed. R. Civ. P. 56(c)(4) & 12(f).  See, e.g.,

Automatic Radio Mfg. Co. v. Hazeltine Rsch., Inc., 339 U.S. 827,

831 (1950) (finding that the allegation of patent misuse in the affidavit was based solely on information and belief and therefore did not comply with the requirements of Fed. R. Civ. P. 56). Therefore, CAG argues that the Court must disregard or strike the affidavit.

The Court disagrees with CAG. This case is distinguishable from Automatic Radio, because in that case reasonable reliance on corporate disregard was not one of the elements of patent misuse. 339 U.S. at 830-31. In contrast, it is an element necessary for substantive consolidation. Owens Corning, 419 F.3d at 212; Lisanti, 2006 WL 2927619, at *8. Xavier's affidavit is relevant to the issue of whether she actually relied on a belief that CAG and the Debtor were unified at the time she purchased the vehicle. That belief was based on interactions with employees of the Debtor and, as a customer of the Debtor, she certainly had personal knowledge of corporate advertisements, which are facts supported by the record. (Adv. D.I. 58, at Exs. 2, 4, & 17 ¶ 8.)

CAG further contends that Xavier does not articulate any harm she suffered as a result of any reliance on her perception of corporate unity between the Debtor and CAG. CAG argues that her alleged reliance on corporate unity in becoming a customer did not relate in any way to the ultimate harm she suffered (being required to accept a different vehicle because the Debtor mishandled the paperwork on the one she bought).

The Court disagrees with CAG's argument.  Actual reliance
for substantive consolidation purposes merely requires a
demonstration that the Plaintiff relied on the unity of the
Debtor and CAG in becoming a creditor.  The creditor is not
required to establish that she was specifically harmed by a
misuse of the corporate form to warrant the remedy of substantive
consolidation.  See, e.g., In re Tureaud, 59 B.R. 973, 976 (N.D.
Okla. 1986) (affirming grant of substantive consolidation over
creditor's argument that a finding of fraudulent formation is
necessary for substantive consolidation); Munford, Inc. v. TOC
Retail, Inc., (In re Munford, Inc.), 115 B.R. 390 (Bankr. N.D.
Ga. 1990) (denying motion to dismiss because substantive
consolidation does not require an allegation that the entity to
be consolidated with the debtor was formed with intent to hinder,
delay or defraud creditors).

Therefore, the Court concludes that Xavier's affidavit
supports her assertion that she actually relied on the unity of
the Debtor and CAG at the time she entered into a relationship
with the Debtor.

### d.   Reasonable Reliance

CAG argues, however, that even if Xavier could demonstrate
actual reliance, it was not reasonable.  CAG presented evidence
that several of the Debtor's financial and trade creditors relied
on the Debtor's separate existence when extending credit or doing

26

business with it.[8]

The Plaintiffs respond that substantive consolidation will not prejudice any specific creditor, but, on the contrary, will benefit all creditors of the Debtor by curing any hardships CAG created in siphoning the Debtor's profits and assets and leaving it a shell company.

The Court rejects the Plaintiffs' argument.  Substantive consolidation is not appropriate where only one creditor relied on a belief that the corporations were unified, if several other creditors relied on the fact that the entities were separate. Other creditors' reliance on separateness demonstrates that the lone proponent's reliance on corporate sameness is unreasonable. Compare In re Macrophage, Inc., No. CIV.06 3793 JBS, 2007 WL 708926, at *6 (D.N.J. Mar. 2, 2007) (affirming denial of substantive consolidation where only one creditor considered the entities as one) with In re S B Bldg. Assocs. Ltd. P'ship, 621 B.R. 330, 371 (Bankr. D.N.J. 2020) (granting substantive consolidation where virtually all parties treated the entities as unified).

---

[8]     For example, Falcon Financial, LLC, extended credit to Triple C and required that the Debtor guarantee that loan.  (D.I. 58, at Ex. 22A.)  General Motors had a separate franchise dealership agreement with the Debtor, which precluded other affiliates from selling GM vehicles.  (Adv. D.I. 40, at Ex. A ¶ 2.9.)  One of the Debtor's trade vendors, Snap-On, bargained for a default guaranty from CAG on trade payables incurred by the Debtor.  (Adv. D.I. 47, at Ex. 4.)

In this case, CAG presented evidence that several other entities treated the Debtor and CAG as separate entities, whereas the Plaintiffs presented evidence that only one creditor, Xavier, relied on a belief they were the same. While the Plaintiffs argue that Richardson and Charles relied on separateness, no evidence of that was presented by affidavit or otherwise. Fed. R. Civ. P. 56(e)(3). See, e.g., Ford v. Bureau of Prisons, 570 F. App'x at 250 (affirming grant of summary judgment because plaintiff failed to rebut the moving party's assertion of fact through affidavits or other evidence).[9] The Court, therefore, concludes that Xavier's reliance was not reasonable.

e.    Harm to other Creditors

CAG also argues that it has presented evidence to support an affirmative defense to substantive consolidation, namely, that other creditors of the Debtor will be harmed by substantive consolidation. CAG argues that if the Court substantively consolidates CAG with the Debtor, then creditors of the Debtor, like Snap-On, which obtained a guarantee of the Debtor's obligation from CAG, would have to share any distribution of CAG's assets with other creditors of the Debtor who did not

---

[9]    The Court also finds it significant that the Trustee did not move for substantive consolidation at any point during this bankruptcy case, which is further evidence that Xavier was alone in her reliance on corporate disregard. As noted, the EPA initially argued that substantive consolidation might be warranted, but settled its claims after conducting discovery.

28

bargain for such a guaranty.  (Adv. D.I. 47, at Ex. 4.)

The Court agrees that CAG has presented sufficient evidence to support an affirmative defense to any substantive consolidation of the Debtor with CAG.  Owens Corning, 419 F.3d at 212-13 (refusing to substantively consolidate in light of an unsecured creditor's bargained-for loan guaranty, a credit enhancement that other creditors did not have).  See also Augie/Restivo, 860 F.2d at 519 (denying substantive consolidation where creditor who had relied on separateness would be harmed).

Finally, the Court finds that the two cases cited by the Plaintiffs in favor of substantive consolidation are distinguishable.  ADPT, 574 B.R. at 102-04; Lisanti, 2006 WL 2927619, at *8.  In both cases, the courts found a disregard of corporate entity separateness.  Additionally, both cases dealt with substantive consolidation of multiple debtor entities rather than the consolidation of a debtor with a non-debtor.  As noted above, substantive consolidation of a debtor with a non-debtor should be used sparingly and has a higher burden of proof than debtor-to-debtor consolidation.  Am. Camshaft, 410 B.R. at 786; Lease-A-Fleet, 141 B.R. at 872-74.  The Court finds that the Plaintiffs have not met that high burden in this case.

IV.   <u>CONCLUSION</u>

The Court concludes that the Plaintiffs have failed to prove (i) that the Debtor and CAG disregarded corporate separateness, and (ii) that the Plaintiffs actually and reasonably relied on the unity of CAG and the Debtor.  Further, the Court finds that CAG has proven its affirmative defense that other creditors, who relied on the corporate separateness of the Debtor and CAG, will be harmed by substantive consolidation.  For these reasons, the Court will grant summary judgment in favor of CAG.

An appropriate Order follows.


Dated: June 11, 2021          BY THE COURT:


                              Mary F. Walrath
                              United States Bankruptcy Judge